IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

Ricky Taylor, Robert Melton,
Randy Jackson, Allen Phillips,
Carl Rice and Grant Boolin,

      Plaintiffs,

v.                                                                    Case No. 12-2697-JWL

McLane Foodservice, Inc.,

      Defendant.

## MEMORANDUM & ORDER

Plaintiffs, current and former delivery truck drivers for defendant, filed this wage and hour suit individually and on behalf of all other similarly situated truck drivers in Kansas and Colorado alleging violations of the minimum wage provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq.  Specifically, plaintiffs, who are paid on a piece rate basis, allege that defendant unlawfully fails to pay its drivers at least the minimum wage for each hour of work.  This matter is presently before the court on defendant's motion to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that plaintiffs have not pled a plausible wage claim as it is undisputed that plaintiffs' average hourly earnings for the week (calculated by dividing plaintiffs' weekly piece rate compensation by the total weekly hours worked) exceed the minimum wage.  As will be explained, defendant's motion is granted and plaintiffs' complaint is dismissed with prejudice.

**Background**

The following well-pleaded factual allegations, taken from plaintiffs' complaint, are accepted as true for purposes of defendant's motion. Defendant McLane Foodservice, Inc. is a supply chain services company that owns and operates distribution centers throughout the United States, supplying foodservice products to quick service and casual dining restaurants. Defendant contracts with, makes sales to, and delivers products to these various restaurant chains. Named plaintiffs are current or former commercial truck drivers for defendant who are or were paid under a piece rate system and who work or worked in defendant's Shawnee, Kansas distribution center.

Pursuant to defendant's piece rate pay policy or compensation plan, defendant's truck drivers are paid for "core" duties pursuant to a piece rate formula based primarily on (1) the number of cases of product delivered on a delivery route; (2) the number of miles driven on a delivery route; and (3) the number of delivery stops made on a delivery route. Defendant assigns special additional pay for "non-core" work activities that are paid at hourly or other rates of pay, and which are in addition to the drivers' normal piece rate earnings. Non-core duties include those duties which ordinarily fall outside of those duties that are incident to performing regular delivery route duties such as attending meetings and training sessions. Drivers are also paid at an hourly rate for time spent undergoing mandatory drug testing and for actual time spent waiting after a tractor or trailer breakdown.

Defendant's drivers perform other duties which are not covered by the piece rate formula and for which they are not otherwise compensated at an hourly rate or other rate of pay such as pre-trip and post-trip duties (*e.g.,* paperwork, vehicle inspection, gathering receipts). Moreover,

drivers are not compensated for time spent waiting for customers to accept deliveries, time spent waiting to be "rescued" once a driver reaches the daily maximum of 11 hours' driving time, and time spent driving to and from gas or weigh stations.  Plaintiffs seek to recover these unpaid wages as a collective action under section 216(b) of the FLSA based on the theory that defendant's failure to compensate its drivers for these hours constitutes a violation of the FLSA's minimum wage provisions.  Plaintiffs do not—and cannot—assert any claim for unpaid overtime compensation because defendant's drivers are exempt from the FLSA's overtime requirements by virtue of the motor carrier exemption.

**Pleading Standards**

Defendant's motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(6).  In analyzing such motions, the court accepts as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff."  *Burnett v. Mortgage Elec. Registration Sys., Inc.*, ___ F.3d ___, 2013 WL 386283, at *2 (10th Cir. Feb. 1, 2013) (citation omitted).  Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Burnett*, ___ F.3d at ___, 2013 WL 386283, at *2 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

3

*Id.* (quoting *Iqbal*, 556 U.S. at 678). "The complaint must offer sufficient factual allegations 'to raise a right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Although "[s]pecific facts are not necessary" to comply with Rule 8(a)(2), the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555)).

**Discussion**

In its motion to dismiss, defendant contends that plaintiffs' complaint does not allege a cognizable cause of action for a minimum wage violation under the FLSA because plaintiffs have not alleged that a calculation of total weekly compensation divided by total weekly hours worked yields a rate below the minimum wage. Stated another way, defendant contends that plaintiffs cannot assert a plausible cause of action because the total compensation earned by defendant's drivers is sufficiently high to yield an average hourly rate at or above the minimum wage level when that total compensation is divided by the actual number of hours worked by defendant's drivers. Plaintiffs contend that they have stated a proper claim under the FLSA for the non-payment of minimum wages by alleging that they were not paid at all for certain compensable work and that they need not allege that their total compensation divided by the actual number of hours worked fell below the minimum wage during any given work week.

Because plaintiffs do not allege that they ever worked uncompensated overtime hours, they invoke the FLSA to seek what the courts have called "pure gap time" wages—that is, straight time wages for unpaid work during pay periods without overtime. *See, e.g.*, *Espenscheid v. DirectSat USA, LLC,* 2011 WL 10069108, *11 (W.D. Wis. Apr. 11, 2011);

4

*Brown v. Lululemon Athletica, Inc.*, 2011 WL 741254, at *4 (N.D. Ill. Feb. 24, 2011); *Wright v. Pulaski County*, 2010 WL 3328015, at *6-7 (E.D. Ark. Aug. 24, 2010). It is undeniable that the "clear weight and trend of authority" is that such claims are not viable under the FLSA when workers have received at least the minimum wage for the pertinent pay period. *See Thrower v. Peach County, Georgia, Bd. of Educ.*, 2010 WL 4536997, at *5 (M.D. Ga. Nov. 2, 2010).

Just this month, the Second Circuit affirmed the Rule 12(b)(6) dismissal of FLSA gap-time claims on the grounds that the FLSA does not permit claims for unpaid hours below the overtime threshold in the absence of an allegation that "the average hourly wage falls below the federal minimum wage." *Lundy v. Catholic Health System of Long Island Inc.*, ___ F.3d ___, 2013 WL 765117, at *6 (2d Cir. Mar. 1, 2013) (citing *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 494 (2d Cir. 1960); *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1280 (4th Cir. 1996)). According to the Second Circuit in *Lundy*,

> [T]he text of FLSA requires only payment of minimum wages and overtime wages. It simply does not consider or afford a recovery for gap-time hours. Our reasoning in *Klinghoffer* confirms this view: '[T]he agreement to work certain additional hours for nothing was in essence an agreement to accept a reduction in pay. So long as the reduced rate still exceeds [the minimum wage], an agreement to accept reduced pay is valid. . . .' Plaintiffs here have not alleged that they were paid below minimum wage.
>
> So long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold . . . . In this way federal law supplements the hourly employment arrangement with features that may not be guaranteed by state laws, without creating a federal remedy for all wage disputes—of which the garden variety would be for payment of hours worked in a 40-hour work week. For such claims there seems to be no lack of a state remedy, including a basic contract action.

*Id*. at *6-7 (citations omitted).

5

The Fourth Circuit case cited in *Lundy* also rejected the theory that the FLSA requires payment for "gap time." In *Monahan*, the Fourth Circuit explained that

> [i]f the terms of the employment agreement are such that a paycheck compensates the employee for all hours worked up to the overtime threshold, and the employer pays the employee the agreed upon amount, the employee has in fact received straight time pay for all nonovertime hours. If the employee has not worked any overtime and has received an hourly wage equal to or in excess of the statutory minimum wage, there can be no FLSA violation.

95 F.3d at 1281. The *Monahan* court so held "well aware of the FLSA's broad interpretation and its remedial purposes because we do not think that in light of the legislative history and intent behind the FLSA that even the most liberal interpretation can encompass such claims." *Id.* at 1282; *see also Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986) (no minimum wage FLSA violation occurred because truck driver's earnings "when translated into an hourly rate for all hours worked was well beyond the statutory minimum").[1]

The vast majority of district courts that have addressed this issue are in accord with the Circuit authority. *See, e.g., Espenscheid*, 2011 WL 10069108, at *11 (if an employee's average wage exceeds the legal minimum, then no minimum wage violation has occurred); *Brown*, 2011 WL 741254, at *5 (following the "weight of authority" that the FLSA does not provide a remedy for workers who have received at least the minimum wage for a pay period in which

---

[1] Defendant contends that the Supreme Court's decision in *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945) ("*Youngerman*") is dispositive of its motion and explicitly holds that compliance with the FLSA's minimum wage requirements under a piece rate system requires a calculation of total weekly compensation divided by total weekly hours actually worked. According to defendant, *Youngerman* recognizes that if that calculation yields a rate at or above the minimum wage, there is no minimum wage violation. Based on the court's research, no court has ever endorsed the broad interpretation that defendant gives to *Youngerman*. *Youngerman* addressed the determination of the regular rate of pay for piece rate workers for purposes of calculating the amount of overtime wages due to those employees. *Youngerman* does not speak to whether pure gap time claims are viable under the FLSA.

they have not worked overtime) (collecting cases); *Thrower*, 2010 WL 4536997, at *5 (employers not obligated under the FLSA to compensate employees for gap time as long as employees receive at least the statutory minimum wage for all nonovertime hours worked); *Wright*, 2010 WL 3328015, at *7 (as a matter of law, plaintiffs have no stand-alone claim for straight time compensation); *Gallagher v. Lackawanna County*, 2010 WL 1342922, at *12 (M.D. Pa. March 31, 2010) ("The logic of *Monahan* is straightforward and unassailable"); *Farris v. County of Riverside*, 667 F. Supp. 2d 1151, 1161 (C.D. Cal. 2009) (agreeing with the "majority rule" that the FLSA does not allow for recovery under a gap time theory; no violation is established if an employee's wages divided by the total number of hours worked is above the FLSA's minimum wage requirements); *Braddock v. Madison County*, 34 F. Supp. 2d 1098, 1112 (S.D. Ind. 1998) (plaintiffs not entitled to additional compensation under the FLSA for "gap time" hours); *Carter v. City of Charleston*, 995 F. Supp. 620, 621 (D.S.C. 1997) (employee cannot succeed on a claim under the FLSA if his average wage for a period in which he works no overtime exceeds the federal minimum wage).

Plaintiffs do not deny that, according to the vast majority of cases, one cannot bring an action under the FLSA for "gap time" in the absence of overtime work and in the absence of an allegation that the average wage falls below the federal minimum wage. Indeed, plaintiffs direct the court to only two district court cases that have recognized pure gap time claims under the FLSA—and only one in the last (nearly) 20 years. In *Norceide v. Cambridge Health Alliance*, 814 F. Supp. 2d 17 (D. Mass. 2011), the district court denied the employer's motion to dismiss the plaintiffs' pure gap time claims under the FLSA after concluding that each compensable hour in the workweek has "its own discrete importance" and that the weekly averaging method

does not effectuate the legislative intent of the FLSA's minimum wage law. *Id*. at *22-23. In that case, however, the district court was concerned that the employer was receiving "free hours of work" relating to "off the clock" work performed by the plaintiffs in light of the plaintiffs' allegations that they were paid on an hourly basis only for their pre-scheduled shifts and that the employer intended for its payment to cover only the scheduled shifts and nothing more. *See id*. at *21-22, *24-25. No similar allegations exist here with respect to defendant's piece rate system. In fact, plaintiffs allege in their complaint that defendant's piece rate system purports to compensate drivers for all hours worked, including the duties that plaintiffs contend are unpaid. In this respect, then, the challenged compensation system here is distinct from those cases in which employees who are paid by the hour, typically by punching a time clock, allege that their employer required "off-the-clock" work. For these reasons, as explained by another district court, the approach adopted by the *Norceide* court is much less effective "when analyzing varying forms of compensations." *Balasanyan v. Nordstrom, Inc*., ___ F. Supp. 2d ___, 2012 WL 6675169, at *7 (S.D. Cal. Dec. 20, 2012) (finding *Norceide* unpersuasive in commissions context).

In the other opinion relied upon by plaintiffs, *Schmitt v. State of Kansas*, 844 F. Supp. 1449, 1457-59 (D. Kan. 1994), the district court recognized the "considerable body of authority" (even 20 years ago) favoring the conclusion that an employee cannot state a claim under the FLSA if his or her average wage, for a period in which he or she worked no overtime, exceeds the minimum wage. Nonetheless, the district court rejected that approach based on "authority" from the Tenth Circuit that the employer failed to distinguish and that the district court deemed "good law and relevant." *Id*. at 1459 (citing *Lamon v. City of Shawnee*, 972 F.2d 1145 (10th

Cir. 1992)).  The Tenth Circuit's case in *Lamon*, then, forms the basis of plaintiffs' claims here and, according to plaintiffs, requires the court to deny defendant's motion to dismiss.  According to plaintiff, the *Lamon* decision squarely addresses and "definitively rejects" the averaging theory of minimum wage compliance and, consequently, controls this case.  As explained below, the court does not read the Tenth Circuit's decision in *Lamon* as broadly as plaintiffs and does not believe that *Lamon* mandates the denial of defendant's motion.

A fuller understanding of the Circuit's decision in *Lamon* first requires a review of the proceedings in the district court.  In *Lamon*, the plaintiffs were police officers who filed suit against their employer alleging that the employer violated the overtime provisions of the FLSA by failing to compensate them for meal periods.  *Lamon v. City of Shawnee*, 1990 WL 186280, at *1 (D. Kan. 1990).  The case ultimately proceeded to trial, where a jury determined that the plaintiffs were entitled to compensation for their meal periods because the employer had violated 29 C.F.R. § 553.223, which exempts payment for meal periods only if the employee is "completely relieved from duty" during meal periods.  *Lamon v. City of Shawnee*, 754 F. Supp. 1518, 1520-21 (D. Kan. 1991).  The jury also determined that the employer had established a 28-day work cycle for purposes of the FLSA such that the threshold for overtime compensation was 171 hours (rather than the 160 hours that would result from a standard calculation of 40 hours of work per week in each of 4 weeks in a 28-day work period).  *Id*. at 1520; 29 C.F.R. § 553.230.

Although it was not obligated to do so, the employer paid its officers overtime for work in excess of 160 hours per 28-day cycle.  *See Lamon v. City of Shawnee*, 972 F.2d 1145, 1148 (10th Cir. 1992).  After the jury's verdict, the plaintiffs filed a motion for an award of damages

and the district court was tasked with determining the rate of back pay for the plaintiffs' unpaid meal periods. *See Lamon*, 754 F. Supp. at 1520. Because the meal periods did not put the plaintiffs over the 171-hours overtime threshold, the district court awarded back pay at the plaintiffs' regular hourly rates. *Lamon*, 972 F.2d at 1149. The employer, however, argued that it had no obligation under the FLSA to pay for the hours between 160 and 171 per cycle so long as plaintiffs' total compensation for 171 hours of work satisfied the FLSA's minimum wage. The district court rejected the argument in a footnote of its opinion:

> The court notes defendant's extensive briefing of its argument that there is no express requirement under the FLSA that plaintiffs be paid for the hours between 160 and 171 which are statutorily exempt from the normal requirement that these hours are compensable at an overtime rate. However, the court finds defendant's argument to be unreasonable in view of the remedial purpose of FLSA. The court finds the requirement that plaintiffs be paid compensation at their regular hourly rate to be implicit in the framework of the FLSA. The court further notes that defendant has conceded that if plaintiffs work more than 171 hours, hours worked between 160 and 171 are compensable at plaintiffs' normal hourly rate. The court finds there to be no principled reason for the requirement that plaintiffs work over 171 hours before they are entitled to be paid for time spent working between 160 and 171 hours.

*Lamon*, 754 F. Supp. at 1521 n.1.

Both parties raised a host of issues on appeal to the Tenth Circuit, including the issue of whether "the district court erred in calculating the rate at which Plaintiff should be compensated for meal periods, if those periods are compensable." *Lamon*, 972 F.2d at 1148. The employer argued on appeal that the plaintiffs' meal periods were compensable, if at all, at the statutory minimum wage, while the plaintiffs sought compensation at the overtime rate consistent with the employer's practice of paying overtime for hours in excess of 160 during a pay cycle. *Id*. at 1155. The Circuit affirmed the district court's conclusion that the proper rate of compensation

was the plaintiffs' regular hourly of pay.  Citing to footnote one of the district court's opinion, the Circuit stated:

> We affirm this decision for the reasons expressed in the district judge's opinion. As long as time spent for meal periods, together with the rest of an officer's compensable time at a regular wage, would not exceed 171 hours per 28 days, no overtime wages would be due for that total time, a result consistent with FLSA. Simply because Defendant chose, after adopting the § 207(k) plan, to continue paying an overtime wage for all hours worked over 160 hours per cycle, while not paying compensation for meal periods, does not compel the conclusion that, were mealtime to be adjudged compensable, the Defendant should be penalized for its own liberality. However, as the district court held, even if the City is not required to pay overtime, compensation for meal periods at a rate less than a regular wage would be contrary to FLSA.

*Id*.

Plaintiffs urge that the Circuit in *Lamon* explicitly held that an employer must pay for each hour of compensable work even in the absence of an overtime claim and that it rejected the "averaging" theory espoused by defendant here.  Unlike plaintiffs, the court does not believe that the Circuit in *Lamon* recognized the viability of pure gap time claims under the FLSA.  In so deciding, the court is persuaded by the Fourth Circuit's treatment of *Lamon* in its *Monahan* opinion.  In that case, the Fourth Circuit held that the district court erred in relying on *Lamon* when it granted summary judgment to the plaintiffs on their pure gap time claims.  *Monahan*, 95 F.3d at 1280.  The *Monahan* court summarized the *Lamon* cases as follows:

> [W]e see the *Lamon* cases as standing for the proposition that meal time hours must meet the requirements of 29 C.F.R. § 553.223 to be exempted from pay, and if they are nonexempt and have not been properly paid, they must be paid a regular rate if the total meal time hours do not exceed the overtime threshold of the applicable pay cycle. We do not believe, by affirming the lower court on the meal time rate of payment issue, that the Tenth Circuit in *Lamon II* unequivocally stated that employees can make out a viable claim for pure gap time under the FLSA.

11

*Monahan*, 95 F.3d at 1272. While the Fourth Circuit acknowledged that the Tenth Circuit in *Lamon* "indirectly addressed straight time gap pay," the *Monahan* court determined that the "decisive issue in the *Lamon II* affirmance . . . was the jury's verdict that the City had not complied with the meal time exemption of 29 C.F.R. § 553.223 and the court's damages determination of the rate by which to compensate plaintiffs for meal time." *Id*. at 1269. In sum, the Fourth Circuit read *Lamon II* as addressing "the compensable rate of back pay for meal time which 'fell in the gap' between 160 and 171 hours during a 28-day cycle" rather than addressing the viability of pure gap time claims under the FLSA. *See id.*

Because of the particular procedural posture of *Lamon II*—where a jury had determined that unpaid meal periods were compensable and the remaining issue was one of damages—the court is unable to divine from that opinion how the Circuit might resolve the viability of pure gap time claims if they were faced with that issue, as here, on a Rule 12(b)(6) motion to dismiss or some other fashion in which the issue was squarely before it. But suffice it to say, the court is not persuaded that *Lamon II* squarely addresses the issue here such that the court is bound by it in resolving defendant's motion. In resolving defendant's motion to dismiss, then, the court writes on a clean slate in terms of Tenth Circuit precedent and, ultimately, is persuaded by the clear weight of authority concluding that the FLSA does not provide a remedy for workers who have received at least the minimum wage for a pay period in which they have not worked overtime. Because plaintiffs' complaint does not allege that they received less than the minimum wage in any pay period, plaintiffs' complaint must be dismissed.

The court also notes that the FLSA does not prohibit employers from compensating employees through non-hourly means of compensation, such as the piece rate system used by

12

defendant here.  The court cannot believe that Congress intended to permit employers to utilize such means of compensation only to require those employers to use an hourly compensation system for any work that is not a component of the piece rate system.  The hourly increment, of course, is undisputedly a simple and practical measuring rod for testing compliance with the FLSA even for those employers who do not pay their employees on an hourly basis.  *See United States v. Rosenwasser*, 323 U.S. 360, 364 (1945) ("Congress necessarily had to create practical and simple measuring rods to test compliance with the requirements as to minimum wages and overtime compensation.  It did so by setting the standards in terms of hours and hourly rates.").  For that reason, translating a piece-rate worker's wages into an average hourly rate seems like a workable method for determining minimum wage compliance under the FLSA.  *See* 29 C.F.R. 776.5 ("[W]hatever the basis on which the workers are paid, whether it be monthly, weekly or on a piecework basis, they must receive at least the equivalent of the minimum hourly rate.").  But when that average hourly rate is at or above the federal minimum wage level, no violation of the FLSA has occurred.

For the foregoing reasons, the court grants defendant's motion to dismiss plaintiffs' complaint.


**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant McLane Foodservice, Inc.'s motion to dismiss plaintiffs' complaint (doc. 21) is granted.


**IT IS SO ORDERED.**

13

Dated this 11th day of March, 2013, at Kansas City, Kansas.


                                        s/ John W. Lungstrum
                                        John W. Lungstrum
                                        United States District Judge